Thomas A. POQUETTE, Dennis K. Jevne, Ronald G. Poquette, Michael H. Peterson, and Eau Claire River City Racquetball Club, Inc., a Debtor-in-Possession Under Chapter 11 of Title 11, United States Code, Plaintiffs,

v.

COMMUNITY STATE BANK, a Wisconsin banking corporation (as successor in interest to) State Bank of Fall Creek, a Wisconsin banking corporation, Steve H. Wise, Gary F. Myers, Eau Claire Tradin' Post, Inc., a Wisconsin corporation, and Roger W. Biesterveld, Defendants.

No. 85–C–666–D.

United States District Court, W.D. Wisconsin.

April 8, 1986.

Frank Barker, Kansas City, Mo., Michael P. Erhard, Madison, Wis., for plaintiffs.

L.C. Hammond, Quarles & Brady, Madison, Wis., and G. Lane Ware, Wausau, Wis., for defendant Community State Bank.

John Wilcox, Wilcox & Wilcox, Eau Claire, Wis., for defendant Wise.

Phillip M. Steans, Menomonie, Wis., for defendants Myers and Eau Claire Tradin' Post, Inc.

Donald R. Marjala, Eau Claire, Wis., and Frank A. Dvorak, Minneapolis, Minn., for defendant Biesterveld.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil case for monetary damages based on, among other things, alleged securities fraud under the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act of the United States (RICO) (18 U.S.C. §§ 1961 et seq.). Jurisdiction exists for these claims pursuant to 28 U.S.C. § 1331.

Defendant Community State Bank (the Bank) moves to dismiss those portions of Counts I, II and III which are based on the purchase of securities by plaintiffs Tom Poquette and Dennis Jevne in October and December 1980. The Bank's motion is based on § 551.59(5) (1980), Wis.Stats., a statute of limitations.

In considering a motion to dismiss, the allegations in the complaint are taken as true, and the complaint is construed in the light most favorable to the plaintiff. *Jen-*

*kins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969), *reh'g denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969); 5 Wright & Miller, *Federal Practice and Procedure,* p. 594. A summary of the allegations of this complaint, which are relevant to the motion to dismiss, follows under the heading "Facts."

## FACTS

Defendant Myers formed a corporation named Eau Claire River City Racquetball Club, Inc. in January 1978. No stock was issued or business conducted until October 1980.

During the summer and fall of 1980 and prior to October 20, 1980, Myers approached T. Poquette and Jevne for the purpose of soliciting and inducing them to purchase an interest in the corporation. Myers made numerous false and fraudulent representations to T. Poquette and Jevne and failed to disclose numerous material facts, all relating to the purchase of stock in the corporation.

During the latter part of 1980, and on and prior to October 20, 1980, defendants Wise and the Bank also approached T. Poquette and Jevne for the purpose of soliciting and inducing them to purchase interests in the corporation. During that period, Wise and the Bank made numerous false and fraudulent representations and failed to disclose numerous material facts to these plaintiffs relating to the purchase of stock in the corporation.

As a direct and proximate result of the defendants' fraudulent acts and representations, T. Poquette and Jevne purchased Club stock in October and December 1980.

Plaintiffs had no knowledge of the material facts which were not disclosed to them, and no knowledge that the material representations made to them were false and fraudulent. Plaintiffs could not have discovered the falsity of these representations and the fraudulence of these omissions earlier by the exercise of reasonable diligence because defendant Myers had removed and concealed all of the pertinent financial records of the Club. Because defendants fraudulently concealed their scheme and otherwise lulled plaintiffs into inaction, plaintiffs did not discover the falsity and fraudulence of the conduct of defendants until 1984.[1]

## OPINION

■ This action was commenced on July 19, 1985 by the filing of a complaint, count I of which claims a violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and of Rule 10(b)–(5) promulgated pursuant to 17 C.F.R. § 240.10(b)–5; count II of which claims a violation of § 17 of the Securities Act of 1933, 15 U.S.C. § 77q, Rule 10(b)–5; and count III of which claims a violation of portions of Wisconsin's uniform securities law, Wis.Stat. §§ 551.41 and 551.59. The limitations period embodied in § 551.59(5) applies not only to actions brought under Wis.Stat. §§ 551.41 and 551.59, but also to actions commenced in United States district courts in Wisconsin asserting claims under § 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5. *Cahill v. Ernst & Ernst,* 625 F.2d 151, 153 (7th Cir.1980). The parties to the present lawsuit appear to agree, and I hold, that Wis.Stat. § 551.59(5) applies as well to actions in federal district courts in Wisconsin asserting claims under § 17 of the Securities Act of 1933 and Rule 10(b)–5.

Throughout 1980 and continuously thereafter until April 27, 1984, § 551.59(5) read:

No action shall be maintained under this section unless commenced before the expiration of 3 years after the act or transaction constituting the violation or the expiration of one year after the discovery of the facts constituting the violation, whichever first expires....

Effective April 27, 1984, and continuously through July 19, 1985, and since, § 551.59(5) has read:

No action shall be maintained under this section unless commenced before the ex-

---

1. Although the complaint does not allege when in 1984 the discovery was made, I resolve the ambiguity in plaintiffs' favor, and I assume the discovery was made no earlier than April 27, 1984. The selection of this particular date is explained below.

piration of 3 years after the act or transaction constituting the violation....[2]

## I

Defendant Bank contends that the stock purchase in October and December 1980, is "the act or transaction constituting the violation" that marks the beginning of the three-year limitations period, within the meaning of either the 1980 or the 1984 version of § 551.59(5); that the three-year period ended in October and December 1983; and that by July 19, 1985, when plaintiffs filed their complaint in this action in this court, their claim based on the 1980 purchase had long been barred.

Plaintiffs' contention is less easily understood. I state it in what I believe is its most persuasive form:

The 1980 version of § 551.59(5) was subject to an equitable tolling doctrine, as if it had read that when fraud is deliberately concealed from a victim, the three-year limitation period commences at the moment of the act or transaction constituting the violation but is immediately tolled until such time as the fraud is discovered by the victim. At the moment of the discovery, the limitation period ceases to be tolled. In the present case, therefore the tolling ceased in 1984, on or after April 27, and this action could have been commenced within three years thereafter and it was in fact commenced well within that three-year period. The 1984 version of § 551.59(5) is subject to the same equitable tolling doctrine and its effect is the same: that is, this action could have been commenced at any time within three years after plaintiffs' 1984 discovery of the fraud.

■ For the purpose of analysis, I will assume for a moment that the 1980 version of § 551.59(5) has remained in effect continuously to the present time and that no legislative change occurred in 1984. Because the fraudulence of the defendants' acts ("the facts constituting the violation") had not been discovered within three years of their occurrence (that is, by October and December 1983), the provision in the 1980 version of § 551.59(5) relating to the effect of discovery would never have come into play. This means that only the three-year limitation contained in the 1980 version could have become operative. As I have noted, plaintiffs contend that this three-year limitation in the 1980 version was subject to an equitable tolling doctrine. However, in the 1980 version, the legislature expressly addressed the effect of delayed discovery of fraud. It is true that it did not expressly address the effect of deliberate concealment of fraud, but it made it quite clear that, discovery or no discovery, three years from the act or transaction marked the absolute limit on the opportunity to sue. No equitable tolling doctrine relating to the effect of delayed discovery can fairly be read judicially into that statute.

Thus, as defendant Bank contends, under the 1980 version, the beginning of the three-year period was October and December 1980 and the ending was October and December 1983. The July 19, 1985, filing of the complaint in this court was far too late. This is the end of the inquiry and the defendant Bank clearly prevails on its motion to dismiss unless a different result arises from the legislative action, effective April 27, 1984, striking from § 551.59(5) the words: "or the expiration of one year after the discovery of the facts constituting the violation, whichever first occurs." Plaintiffs contend that the 1984 version applies to this case and that its effect is to render timely the commencement of this action.[3] I will seek to determine whether

---

**2.** Both the 1980 and 1984 versions of § 551.-59(5) conclude with the clause: "but the time specified for commencing such action shall be extended by reason of any fact and for the time specified in ss. 893.13 and 893.16 to 893.23." The content of §§ 893.13 and 893.16 to 893.23 is clearly irrelevant to the present motion to dismiss.

**3.** As noted above, the 1980 version and the 1984 version define the triggering of the three-year period in identical words: "before the expiration of 3 years after the act or transaction constituting the violation...." The October and December 1980 stock purchases must be the triggering acts or transactions under both the 1980 and the 1984 versions, and three years would have passed by October and December

the 1984 version has any application here. For that purpose, I consider another Wisconsin statute, § 990.06, which undertakes to deal generally with transitions when the legislature enacts laws affecting existing statutes of limitations.

## II

As of October and December 1980, and continuously thereafter to the present, § 990.06 has provided:

**Repeal or change of law limiting time for bringing actions.** In any case when a limitation or period of time prescribed in any act which shall be repealed for the acquiring of any right, or barring of any remedy, or for any other purpose shall have begun to run before such repeal and the repealing act shall provide any limitation or period of time for such purpose, such latter limitation or period shall apply only to such rights or remedies as shall accrue subsequently to the time when the repealing act shall take effect, and the act repealed shall be held to continue in force and be operative to determine all such limitations and periods of time which shall have previously begun to run unless such repealing act shall otherwise expressly provide.

It is not wholly clear that § 990.06 has any application here. (1) The codifier's heading refers to "repeal or change of law limiting time," while the text refers only to repeal, not to change or amendment. The 1984 change in § 551.59(5) was made by a session law, 1983 Wisconsin Act 216, section 13 of which provided:

"551.59 ... (5) ... [is] amended to read: ... (5) No action shall be maintained under this section unless commenced before the expiration of 3 years after the act or transaction constituting the violation ~~or the expiration of one year after the discovery of the facts constituting the violation, whichever first expires~~

...." (striking of the words is as shown in the text).

So 1983 Wisconsin Act 216 does not expressly repeal, but rather expressly amends the 1980 version. (2) Section 990.06 applies, by its terms, when the repealing (or, perhaps, amending) act "shall provide any limitation or period of time for such purpose...." It is highly probable that the legislature had in mind situations in which the limitations period set by the repealing act differs from that set by the repealed act. However, the 1984 version consists entirely of the three-year limitations period, exactly as it had appeared in the 1980 version.

Despite these difficulties, I conclude that I am bound to look to § 990.06 for the answer to the transitional question here, rather than to create a judicial rule. It seems clear that in enacting § 990.06, the legislature intended to promulgate a general, codified, legislative rule to govern transitions between limitations periods it might set at one time and those it might set at another. I construe "repeal" in § 990.06 to include "amendment." Also, although the three-year limitation as it appears in the 1980 version survives intact in the 1984 version, the effect of the deletion of the one-year alternative limitation is so significant as to create the kind of transition to which § 990.06 was intended to apply.

### A.

In analyzing § 990.06, I will assume, initially, that it does not include the words: "such latter limitation or period shall apply only to such rights or remedies as shall accrue subsequently to the time when the repealing act shall take effect, and...." If this assumption is made, § 990.06's application to the present case would be as follows:

In any case when a limitation or period of time prescribed in any act which shall

---

1983, under both versions. It may seem pointless inquiry whether one or the other version applies. However, because, unlike the 1980 version, the 1984 version is silent on the significance of delayed discovery, it may be susceptible to judicial grafting on of an equitable tolling doctrine. I express no opinion whether the 1984 version is susceptible to the equitable tolling doctrine. The possibility that it is so susceptible, however, requires resolution of the question whether, under § 990.06, the 1984 version has any application to this case.

be repealed [or amended] for the ... barring of any remedy ... shall have begun to run before such repeal [or amendment] and the repealing [or amending] act shall provide any limitation or period of time for such purpose, ... the act repealed shall be held to continue in force and be operative to determine all such limitations and periods of time which shall have previously begun to run unless such repealing act [the April 27, 1984 session law] shall otherwise expressly provide.

So read, § 990.06's answer to the present question is clear: the 1980 version of § 551.59(5) governs and the 1984 version plays no role whatever. The 1980 version's period of three years after the act or transaction constituting the violation (the October and December 1980 purchases) had "begun to run previously" to April 27, 1984, the effective date of the amending session law. That session law did not "expressly provide" "otherwise" than that the 1980 version would continue in force and would be operative to determine the period within which this present action would be required to be commenced.

### B.

The question then becomes whether application of the 1984 version of § 551.59(5) to this case is required by the presence of the words in § 990.06: "such latter limitation or period [the limitation or period set by the April 27, 1984 session law] shall apply only to such rights or remedies as shall accrue subsequently to the time when the repealing act shall take effect [April 27, 1984]." Plaintiffs appear to contend that under the 1984 version of § 551.59(5), rights or remedies in cases of fraud "accrue," within the meaning of § 990.06, only when the fraud is discovered and the equitable tolling of the three-year limitation ceases; that discovery did not occur here earlier than April 27, 1984, when the 1984 version had taken effect; that their rights and remedies thus "accrue[d] subsequently to the time when the repealing [or amending act] [took] effect"; and that the 1984 version of § 551.59(5) governs this case.

The problem in statutory construction appears to arise from the legislative use of two potentially inconsistent expressions— "period ... shall have begun to run" and "accrue." The legislature began straightforwardly by describing the cases to which some particular limitations statute (statute (A)) would apply: namely, all those cases in which the period prescribed by statute (A) "shall have begun to run" before the effective date of a repealing or amending statute (statute (B)). The legislature could have completed its task by providing that only in cases in which the period prescribed by statute (A) "shall not have begun to run" before the effective date of statute (B), statute (B) apply. Instead, the legislature provided that statute (B) would apply "to such rights or remedies as shall accrue subsequently" to the effective date of statute (B). Conceivably, therefore, depending upon the meaning given the term "accrue" in statute (B), in a single given case such as the one at hand, a certain limitations period (such as three years) prescribed by both statute (A) and statute (B) could be deemed to have begun to run at a certain time under statute (A) (such as the time of a stock purchase) and at a different time under statute (B) (such as the time the purchaser of stock discovers fraud on the part of the seller).

If such a discrepancy were to exist, the three-year period prescribed by statute (B) might begin to run some time during the running of the three-year period prescribed by statute (A). The result would be a partial overlap of two periods of limitation. On the other hand, the three-year period prescribed by statute (B) might begin to run some time after the three-year period prescribed by statute (A) had run its course. The result would be a hiatus. In the present case, if plaintiffs' contention is accepted, a hiatus would result—the period from October and December 1983, when the three-year period prescribed by the 1980 version of § 551.59(5) expired, until a time not earlier than April 27, 1984, when the fraud was discovered, the right or remedy "accrued," and the three-year period

prescribed by the 1984 version began to run.

In construing the legislative effort in § 990.06 to provide a general rule for transitions which may be created from time to time by legislative action affecting a variety of limitations periods in a variety of categories of cases, I proceed on the assumption that the legislature intended to cause neither overlappings of earlier enacted limitations periods by the later enacted periods, nor hiatuses between the two. As noted above, this result can be achieved by construing the words "such rights and remedies as shall accrue subsequently to the time when the repealing act shall take effect" as if they read "rights and remedies as to which no limitation or period prescribed in any earlier act shall have begun to run prior to the time the repealing act shall take effect." I adopt this construction of § 990.06.

■ So construed, and as applied to the present case, the effect of § 990.06 is that the 1984 version of § 551.59(5) is inoperative. Only the 1980 version is operative and, as to the 1980 stock purchases, it bars this action.

### ORDER

The motion by the defendant Community State Bank to dismiss counts I, II and III of the complaint in this action as to it, insofar as they embody claims based on the purchase of stock in 1980, is granted.

The clerk is directed not to enter judgment, presently, dismissing the action in this respect as to defendant Community State Bank.